IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
BOBBY DAVIS, BRENDA DAVIS,    )
and GEOFFREY DAVIS,           )
                              )
            Plaintiffs,       )          8:11CV69
                              )
      v.                      )
                              )
BAMFORD, INC., and            )          MEMORANDUM AND ORDER
NANCY MARET PACKER, Personal  )
Representative of the ESTATE  )
OF MICHAEL PACKER,            )
                              )
            Defendants.       )
_____)
```

This matter is before the Court on the motion for partial summary judgment filed pursuant to Federal Rule of Civil Procedure 56 by plaintiffs Bobby Davis, Brenda Davis, and Geoffrey Davis (Filing No. 75, with brief and index of evidence, Filing Nos. 76 and 77). Defendants Bamford, Inc., and Nancy Maret Packer, Personal Representative of the Estate of Michael Packer, filed a brief in opposition to the motion (Filing No. 83, with index of evidence, Filing No. 84). Plaintiffs then filed a reply brief (Filing No. 90), which defendants moved to strike (Filing No. 91). Plaintiffs filed a response to defendants' motion to strike, with index of evidence (Filing Nos. 92 and 93). The Court heard oral argument on the motion on June 11, 2012. After reviewing the motions, briefs, evidentiary record, oral arguments, and applicable law, the Court finds that plaintiffs' motion for partial summary judgment will be granted and

defendants' motion to strike plaintiffs' reply brief will be denied.

## I.   Background and Procedural History.

This action arises out of a traffic accident that occurred in Nebraska on May 11, 2009.  The following facts are not disputed.  On the day of the accident, Michael Packer ("Packer") was operating a pickup truck owned by his employer, defendant Bamford, Inc. ("Bamford").  Bamford had altered the pickup truck, adding a rack for the purpose of transporting plumbing materials.  Packer was carrying metal pipe on the pickup truck at the time of the accident.

Prior to the collision, Packer was traveling westbound along Interstate 80 in Dawson County, Nebraska.  He left the westbound lanes and traveled across the median onto the eastbound lanes of Interstate 80, where he collided nearly head-on with the Davis vehicle, driven by Bobby Davis, with Geoffrey Davis as passenger.  As a result of the collision, Bobby Davis was pinned inside his vehicle by a length of metal pipe that came from the Bamford pickup truck, and Packer died at the scene.

Prior to the accident, on May 7, 1995, Packer was diagnosed with having a tonic-clonic seizure, and he had some episodes of altered mental status after that.  No witness can confirm that Packer suddenly and actually lost consciousness prior to the collision.  No post-accident evidence exists that

can confirm that Packer suddenly and actually lost consciousness prior to the collision. Defendants have provided pharmacy records from December 2008 to April 2009 for depakote and divalproex, which are anti-seizure medications.

Packer was acting in the course and scope of his employment with Bamford at the time of the accident. Bamford did not request medical information regarding his ability to perform his job-related driving functions prior to or after he began his employment. Bamford supplied all load securement equipment and was aware of industry standards regarding load securement and the safety purpose of such standards.

Plaintiffs filed their complaint in this Court pursuant to diversity of citizenship jurisdiction, 28 U.S.C. § 1332 (Second Amended Complaint, Filing No. 18). Plaintiffs contend that Packer was negligent both in driving his vehicle and in securing the metal pipe to the pickup truck. Moreover, plaintiffs contend that Packer was negligent *per se* by violating various Nebraska statutes. As to Bamford, plaintiffs claim liability via the doctrine of *respondeat superior*, Bamford's negligent hiring, and Bamford's own negligence.

Defendants offered two affirmative defenses: first, "Plaintiffs' claims are barred because of sudden loss of consciousness" of Packer; and second, "Plaintiffs' Complaint fails to allege sufficient and plausible facts to state a claim"

upon which relief can be granted (Filing No. 19, at 3). With this motion for partial summary judgment, plaintiffs "seek summary disposition on the affirmative defenses raised" in defendants' answer (Filing No. 75, at 2).

In their brief opposing partial summary judgment, defendants do not contest plaintiffs' argument for summary judgment as to defendants' second affirmative defense, that of failure to state a claim. The Court finds that plaintiffs have alleged sufficient facts to state a claim against both defendants, and partial summary judgment will be granted to the extent of this second affirmative defense.

**II. Motion for Partial Summary Judgment - Loss of Consciousness Affirmative Defense.**

**A. Applicable Law.** Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Where the unresolved issues are primarily legal rather

than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004). When ruling on a motion for summary judgment, the Court views "the facts in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in the nonmoving party's favor." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011).

Since this Court is sitting in diversity jurisdiction, Nebraska law provides the substantive law of decision. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Both parties cite a Nebraska Supreme Court decision directly on point with regard to the loss of consciousness affirmative defense: *Storjohn v. Fay*, 246 Neb. 454, 519 N.W.2d 521 (1994).

In *Storjohn*, the plaintiff sued the defendant following a head-on collision, where defendant, traveling southbound, entered the northbound lane and struck plaintiff's vehicle. At trial, defendant, who had a history of epilepsy, claimed that he had lost consciousness prior to the collision. The only evidence at trial to support this contention was his own testimony. Nevertheless, the trial court allowed a jury instruction regarding a defense of unavoidable accident due to the loss of consciousness. The jury returned a verdict in favor of defendant, and plaintiff appealed.

The Nebraska Supreme Court set forth the contours of the doctrine of loss of consciousness defense in Nebraska.

> The unavoidable accident doctrine is well established in Nebraska and has been defined by this court as an unexpected catastrophe which occurs without any of the parties thereto being to blame for it.
>
> . . .
>
> The rationale behind a loss of consciousness defense is that where a driver was suddenly deprived of his senses by 'blacking out,' he could not comprehend the nature and quality of his acts.
>
> . . .
>
> Where a sudden loss of consciousness is an affirmative defense, a defendant's burden is twofold.  First, the defendant must present sufficient evidence to establish that he suffered a sudden loss of consciousness prior to the accident, and second, that the loss of consciousness was not foreseeable.  In determining whether an issue presents a question of law for the court or a question of fact for the jury, it has been held that where the evidence is conflicting as to whether the accident was caused by the driver's sudden loss of consciousness and whether the loss of consciousness was unforeseen, it is a question of fact to be determined by the jury.
>
> . . .
>
> However, if the evidence points to only one reasonable conclusion, it is a question of law for the court.

*Storjohn*, 246 Neb. at 458-460, 519 N.W.2d at 526-527.

With regard to the first prong of the affirmative defense, evidence of actual loss of consciousness, the *Storjohn* Court found the defendant's testimony at trial lacking. "The defendant's testimony as to his recollection of events prior to the accident is inconsistent and contradictory. Without corroborating evidence, either in the form of medical testimony or other witnesses, it is difficult to reasonably infer from his testimony that he was unconscious prior to the accident." *Id.* at 463, 519 N.W.2d at 528.

However, assuming that the defendant had satisfied the first prong, the *Storjohn* Court also addressed the second prong of the affirmative defense, foreseeability. "The defense is not available where a driver was put on notice of facts sufficient to cause an ordinary and reasonable person to anticipate that his or her driving might likely lead to injury to others." *Id.* at 463, 519 N.W.2d at 528. "Courts have generally held that where it is undisputed that the defendant knew that he or she was subject to attacks which could result in a sudden loss of consciousness, the evidence is such that the defendant's loss of consciousness was foreseeable." *Id.* at 464, 519 N.W.2d at 528.

The defendant in *Storjohn* testified that he suffered his first epileptic seizure in 1968 or 1969, some fifteen years before the accident. He was under a doctor's care and was taking medication for his condition. His doctor had not told him not to

drive. Despite the fact the defendant testified that he had no reason to think that he might pass out on the day of the accident, the *Storjohn* Court stated,

> According to the defendant's own testimony, it is quite apparent that the defendant knew he was subject to seizures and as a result would lose consciousness. It is also apparent that the medication he had been taking did not control his seizures. The only evidence the defendant offers to support his contention that the seizure was not foreseeable is his belief that he would not have an attack "that day" and the fact that his doctor told him at some unstated time that he could drive. The defendant's subjective belief alone is not sufficient to establish that his loss of consciousness was not foreseeable. Furthermore, courts have found that the fact that a doctor informed a defendant that he or she could drive is not persuasive.

*Id.* at 466, 519 N.W.2d at 529. Accordingly, the Court concluded, "There is no testimony in the record to support the conclusion that the driver's loss of consciousness was not reasonably foreseeable; therefore, the trial court's instruction on the defense of unavoidable accident found no support in the record." *Id.* at 466, 519 N.W.2d at 530.

Finally, given the foreseeability of the defendant's seizure, the *Storjohn* Court stated, "Considering the undisputed evidence establishing that the defendant knew he suffered from

epileptic seizures, it is apparent that the defendant was negligent as a matter of law in driving his car." *Id.* at 466, 519 N.W.2d at 530. "The undisputed evidence in this case establishes that the defendant knew or should have known that he was likely to lose consciousness at any time, and therefore, his driving a car under the circumstances was negligence as a matter of law." *Id.* at 467, 519 N.W.2d at 530. "The judgment of the trial court is reversed and the cause remanded for a new trial at which the jury shall be instructed as to the defendant's negligence as a matter or law." *Id.* at 467, 519 N.W.2d at 530.

    **B. Discussion.**

    **1. Evidence of Loss of Consciousness.** Packer died in the accident, so no light can be shed on his own experience before the collision. In addition, the parties agree that no witness can confirm that Packer suddenly and actually lost consciousness prior to the collision, and no post-accident evidence exists that can confirm that Packer suddenly and actually lost consciousness prior to the collision. However, there is some relevant evidence supporting each parties' position on the possibility that Packer lost consciousness before drifting across the median of the highway.

    Plaintiffs claim that "there is no evidence that Packer actually experienced a sudden loss of consciousness prior to the collision" (Filing No. 76, at 16). On the contrary, plaintiff

-9-

Bobby Davis stated in his deposition that immediately before the collision, Packer "was in the upright position" and that he "seemed to be in control of his vehicle" (Ex. 3, Filing No. 77, at 2).

In addition, plaintiffs cite the deposition testimony of an eyewitness to the accident, Saqib Janjua, who was following behind the Davis vehicle at the time of the collision. Plaintiffs state in their brief, "An eye witness testified that he noted avoidance steering by Packer to the right immediately prior to impact. Index Ex. P" (Filing No. 76, at 16). Unfortunately, plaintiffs do not cite a particular line of the deposition testimony. The Court assumes that plaintiffs are referring to the testimony at deposition page 15, lines 15-18, where the eye witness stated, "First time I notice it [the Packer pickup truck] was on the shoulder. Then it came to the left line -- left lane, which was on my left, came to the right and then back to the left" (Ex. 16, Filing No. 77, at 3). In addition, at deposition page 17:17-23, the eye witness stated, "So, first thing I witness was as I said before the truck -- I would say the pickup truck, which was coming from the opposite side, the time I witness it was on the shoulder. Then it came on the left lane. It went to the right lane and came back to the left, and then it hit the eighteen-wheeler [the Davis vehicle]" (*Id.* at 4).

Defendants, on the other hand, emphasize that

> . . . Packer did not attempt to brake or swerve to avoid the collision in question, he was traveling for approximately 8-9 seconds from when he left his original lane of travel until he collided with Plaintiffs' tractor-trailer, and his path of travel was consistent with someone who was not actively controlling the Bamford vehicle.

(Filing No. 83, at 9). Defendants cite Trooper Moody of the Nebraska State Patrol, who stated that as a result of his observation of the accident scene, "there was no evasive . . . action taken on his [Packer's] part to -- either braking or even slowing down" (Ex. 13, Filing No. 84, at 4). Trooper Moody verified that the pickup truck "came directly across [the median] though at an angle to the eastbound lanes" and that this path would "be consistent with somebody who is no longer actively operating the vehicle" (*Id.* at 5, 6). Trooper Moody testified that "normally if someone goes off the road like that and hits the median if they went to sleep the vibration of the vehicle whatever it might be shakes, wakes them up, they turn, try to correct themselves or whatever, anything to avoid what's going to happen" (*Id.* at 7). Defendants also cite the testimony of Ted Sokol, an accident reconstruction expert, with similar conclusions (Filing No. 83, at 10-11).

      The Court rejects plaintiffs' contention that the evidence is in "equipoise" such that the jury would have no

choice but to flip a coin to decide the loss of consciousness issue (Filing No. 76, at 17). The Court finds that a jury could reasonably find that the straight path taken by Packer's truck across the median is evidence of a loss of consciousness. The Court finds that whether or not Packer lost consciousness before the collision would be a genuine issue of fact for the jury at trial, but for the issue of foreseeability, discussed next.

    **2. Foreseeability**. In their brief in opposition to the motion for partial summary judgment, defendants describe Packer's seizure history (Filing No. 83, at 6-8). Defendants state that Packer had a grand mal seizure on May 7, 1995. He went to an emergency room with an altered mental status and slurred speech, but no loss of consciousness, on February 27, 1996. He was treated by three doctors during the time span of 1995-2008. He was prescribed anti-seizure medication in 1996. He was seizure-free from 1996 - 2004, and the evidence suggests that he was also seizure-free from 2004 - December 2008.

    Packer suffered a seizure in December 2008, just five months before the accident, even though he was taking anti-seizure medication at the time. On that occasion, according to the emergency room report, Packer had "no recall of the event. He states that he had gone to bed and the next thing he knew he was surrounded by paramedics. He apparently either got up or fell down, he is really not sure but he struck his shoulder on

something and now has a left shoulder dislocation" (Ex. 11, Filing No. 77, at 31). Packer filled prescriptions for anti-seizure medications monthly from December 2008 - April 2009, less than a month before the accident.

Defendants state, "It is clear from the above-referenced records that Packer had a seizure disorder" (Filing No. 83, at 7). However, defendants emphasize the fact that "from February of 1996 until December of 2008, there is no documented instance wherein Packer had a seizure" (*Id*.). Defendants conclude that "it was likely that Packer was properly medicated with anti-seizure medication on May 11, 2009 [the day of the accident]" (*Id*. at 8).

The facts of the *Storjohn* case are not entirely clear as to how many seizures that defendant had suffered or when his last seizure occurred before the day of the accident. "The defendant testified that in about 1968 or 1969, he was told that he probably had epilepsy and had been taking medication ever since. The defendant further testified that 15 years prior to the accident, he had an attack, while driving down the highway." *Storjohn*, 246 Neb. at 457, 519 N.W.2d at 525. "He stated that since the time of that attack, he had never passed out while driving a car; however, he had passed out at work." *Id.* at 457, 519 N.W.2d at 525.

-13-

At another point, the *Storjohn* Court cites the defendant's testimony:

> Q: But you - in this, you say, 'I have passed out twice in two years, once each year, and even if I wasn't driving either time,'-
>
> A: Yeah.
>
> Q: So here you are saying that you passed out twice and hadn't been driving.

*Id.* at 465, 519 N.W.2d at 529. Immediately after this quoted testimony, the *Storjohn* Court stated, "According to the defendant's own testimony, it is quite apparent that the defendant knew he was subject to seizures and as a result would lose consciousness." *Id.* at 466, 519 N.W.2d at 529.

As part of their argument, defendants cite Nebraska Revised Statute § 60-484 for the proposition that it was reasonable for Packer to drive a vehicle five months after experiencing a seizure. The statute stipulates that an applicant for a motor vehicle license should be asked if the applicant has experienced seizures within the last three months. Defendants argue that this implies that it is then reasonable for a person to drive a vehicle if the person has been seizure-free for at least three months. Defendants state that the statute was promulgated in 2000, after the *Storjohn* case, apparently implying that if the statute had been promulgated before *Storjohn*, and if the *Storjohn* defendant had been seizure-free for three months

immediately before the accident, the *Storjohn* Court would *not* have found it "quite apparent" that the loss of consciousness was foreseeable.  This Court is not ready to make such a presumption, and will follow the rubric laid down by the *Storjohn* Court without reference to the proposed three-month cut-off.

On the issue of foreseeability, the Court can find no meaningful way to distinguish the facts of this case from those of *Storjohn*, where the Nebraska Supreme Court found that the defendant's loss of consciousness was foreseeable.  The Court finds that Packer's loss of consciousness was foreseeable.  Therefore, the loss of consciousness defense is not available to defendants.

    **3.   Negligence as a Matter of Law**.  In *Storjohn*, the Nebraska Supreme Court concluded, "The undisputed evidence in this case establishes that" Packer "knew or should have known that he was likely to lose consciousness at any time, and therefore, his driving a car under the circumstances was negligence as a matter of law."  *Id.* at 467, 519 N.W.2d at 530.  This Court, too, finds that Packer knew or should have known that he was likely to lose consciousness at any time, and, therefore, his driving a truck under the circumstances was negligence as a matter of law.  Therefore, the Court will grant plaintiffs' motion for partial summary judgment on the issue of liability and finds that defendants are liable as a matter of law.

**III. Motion to Strike Reply Brief.**

Defendants move to strike plaintiffs' reply brief for tardiness. Nebraska Civil Rule 7.0.1(c) states, "The moving party may file a reply brief and index of evidence within 7 days after the opposing party files and serves the opposing brief." Nebraska Civil Rule 6.1(b) states, "Federal Rule of Civil Procedure 6 applies when computing any period of time stated in these rules. The 3-day federal mailing rule applies whether service is accomplished by mail, by leaving with the clerk, by electronic filing, or by other means to which the parties have consented." Thus, after defendants filed an opposing brief, plaintiffs had ten days to file their reply brief.

Plaintiffs filed their motion for partial summary judgment on March 22, 2012. Defendants filed their opposing brief on April 12, 2012 (which was four days before the due date, April 16, 2012). Because April 22, 2012, ten days later, fell on a Sunday, plaintiffs were required to file their reply brief by Monday, April 23, 2012. However, plaintiffs did not file their reply brief until April 26, 2012. Plaintiffs state that they filed their reply brief in reliance on the date supplied by the Court's CM/ECF system, which did not take into account the fact that the defendants had filed their opposing brief early, and continued to list the reply brief due date as April 26, 2012. The Court finds that plaintiffs have shown good cause for filing

the reply brief on April 26, 2012.  Therefore, defendants' motion to strike will be denied.  Accordingly,

IT IS ORDERED:

1)  Plaintiffs' motion for partial summary judgment (Filing No. 75) is granted;

2)  Defendants' motion to strike plaintiffs' reply brief (Filing No. 91) is denied; and

DATED this 19th day of June, 2012.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court